IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) **HECTOR ALEJANDRO VILLASANA CASTILLO**, individually and on behalf of <br> (2) **H & R ENTERPRISES, LLC**, an Oklahoma Limited Liability Company, <br><br> Plaintiff, <br><br> vs. <br><br> (1) **ROBERT S. DUREN, JR.**, and <br> (2) **STUART, CLOVER, DURAN, THOMAS & VORNDRAN, LLP**, <br><br> Defendants, | Case No. CIV-13-1291-M <br><br> **ATTORNEY LIEN CLAIMED** <br><br> **JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT

**COMES NOW** the Plaintiff, Hector Alejandro Villasana Castillo, by and through his attorney of record, Sean E. Manning and for his Complaint against the Defendants Robert S. Duren, and Stuart, Clover, Duran, Thomas & Vorndran, LLP, hereby alleges and states as follows:

### I. PARTIES

1.   Plaintiff Hector Alejandro Villasana Castillo is a resident of the City of Monterey in the country of Mexico, but at all times relevant hereto, owned property, both real and personal, in various counties within the State of Oklahoma, and was the sole and managing member of H & R Enterprises, LLC, an Oklahoma Limited Liability Company, whose principle place of business was in the State of Oklahoma.

1

2. Defendant Robert S. Duren, Jr. is an attorney practicing and residing in Pottawatomie County, State of Oklahoma and is a partner in the law firm, Stuart, Clover, Duren, Thomas & Vorndran, LLP ("Stuart Clover"), also a defendant in this case.

3. Defendant Stuart, Clover, Duren, Thomas & Vorndran, LLP, is a law firm and an Oklahoma Limited Liability Partnership with its principle offices located in the City of Shawnee, Pottawatomie County, State of Oklahoma.

## II. JURISDICTION AND VENUE

4. The District Court of the Western District of Oklahoma has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(2) since the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of the State of Oklahoma and a citizen of a foreign state.

5. Venue is proper in the District Court of the Western District of Oklahoma pursuant to 28 U.S.C. § 1391(b) as all defendants are residents therein.

## III. STATEMENT OF FACTS RELEVANT TO ALL CLAIMS

6. On or about June 19, 2009, Plaintiff became involved in an arbitration matter involving his business, H & R Enterprises, LLC ("H & R") and a company in Texas called Landmark Structures I, LP ("Landmark") related to some industrial painting and sealing work Plaintiff claimed he had not been paid for in the amount of about $950,000.00.

7. Plaintiff hired Defendants Duren and Stuart Clover to represent him and H & R in the arbitration matter before the American Arbitration Association in Dallas, Texas; Case No. 71 110 00546 11.

8.      On May 19, 2010, during the pendency of the said arbitration, Plaintiff was arrested outside his home in Sapulpa, Oklahoma (Creek County) by Immigration and Customs Enforcement officers claiming Plaintiff was living and working illegally in the United States. He was then deported back to Mexico without a hearing on May 21, 2010.

9.      Following his deportation, Plaintiff put Kimberly Villasana (*a.k.a.* Kimberly Joyce), who was his wife at the time, in charge of the daily H & R business operations in the U.S. while he continued to manage field operations and project bids from Mexico.

10.     On May 18, 2010, the day before Plaintiff's arrest, Defendant Duren prepared a "Durable Power of Attorney and Designation of Guardian" ("POA"), purportedly making Kimberly Villasana Plaintiff's guardian and attorney-in-fact.

11.     The POA was prepared in the offices of Stuart Clover without Plaintiff's knowledge or permission and Plaintiff's signature was forged thereon.

12.     Upon information and belief, it was Defendant Duren who forged Plaintiff's signature on the POA.

13.     The POA was purportedly witnessed by two (2) people at Stuart Clover whose signatures are completely illegible; Kimberly Villasana signed the Acceptance clause of the POA, then it was notarized by a Notary Public at Stuart Clover's law firm.

14.     Plaintiff only came to full knowledge of the facts surrounding the creation, forgery and use of the POA in early 2013.

15.     On April 27, 2011, with Plaintiff in Mexico, Landmark entered into a partial settlement agreement with H & R, negotiated by Duren and signed by Kimberly Villasana (on behalf of the company) in the amount of about $635,000.00. Landmark paid same to

Stuart Clover on behalf of H & R. However, there still remained a dispute in arbitration over about $300,000.00 in charges by H & R and offset claims by Landmark.

16. Of the $635,000.00 paid to Stuart Clover for the benefit of Plaintiff and his company, approximately $160,000.00 is still unaccounted for.

17. Upon information and belief, Kimberly Villasana used the forged POA prepared by Duren to open new bank accounts and invest in Certificates of Deposit, without Plaintiff's knowledge, to which she transferred, embezzled and concealed some or all of the still unaccounted funds from the partial settlement with Landmark.

18. On November 14, 2012, the Arbitrator entered an Award in favor of Plaintiff and H & R for the sum of $66,753.17, on the remaining and unsettled claims. However, to date, Plaintiff has never received any this money.

19. Despite Plaintiff's numerous telephone messages, calls and emails to Defendant Duren, many of which were never returned, inquiring of the status of his arbitration case, well past November 14, 2012, and into early 2013; Duren failed to advise Plaintiff of the conclusion of the arbitration, that there had been a final order entered in his favor or that additional money was owed him by Landmark.

20. To the contrary, Duren deceived and misrepresented to Plaintiff that the arbitration was *not* fully concluded, that there was no final order entered and that no determination of how much money was owed him had been made; only for Plaintiff to discover otherwise in about April 2013.

21. On February 23, 2012, seven (7) months *before* the final arbitration award of November 14, 2012, by fraudulently stating to the Stephens County District Court about

not knowing her husband's whereabouts, Kimberly Villasana obtained a default Decree of Dissolution of Marriage from Plaintiff, without him ever knowing she had filed for divorce.

22.  Since Plaintiff's deportation, and up until at least the date of the arbitration award, Kimberly Villasana worked closely with Duren as the H & R corporate representative. Upon information and belief, Duren knew Kimberly had divorced Plaintiff, but he failed to advise Plaintiff as such.

23.  The attorney hired by Kimberly Villasana to help her obtain the fraudulent default divorce decree, is a personal friend of both hers and Duren, thus providing additional opportunities for Kimberly Villasana's divorce from Plaintiff to come to the attention of Defendant Duren.

24.  At no time prior to 2013 did Duren advise Plaintiff that Kimberly Villasana had made fraudulent claims in order to obtain a default decree of divorce from him.  Rather Duren concealed this fact, keeping Kimberly close enough to Plaintiff to allow her access to his money, property and assets until the arbitration was finalized.

25.  In the months following her divorce from Plaintiff, continuing until the end of 2012 or early 2013, Kimberly Villasana availed herself of the forged POA prepared by Duren to assist her in transferring away all of Plaintiff's personal and business assets and property, both real and personal, including Plaintiff's Sapulpa, Oklahoma residence.

26.  The total value of Plaintiff's loss is nearly $860,000.00, and Plaintiff believes that Kimberly Villasana may have shared money she made from the sale of Plaintiff's property with Duren for his participation in the fraud and cover up.

27.     In late October 2012, without being aware that she had divorced him, Plaintiff requested certain H & R financial documents from Kimberly Villasana, which she refused to produce.

28.     On or about November 20, 2012, Plaintiff discovered the forged POA while speaking to his bank about money missing from his accounts and irregular transactions, but he did not know at that time that the POA had been prepared by Duren.

29.     As a result of his discovery of the forged POA from his bank, Plaintiff asked his trusted lawyer, Defendant Duren, to help him revoke or rescind the POA and to attempt to determine the extent of the financial damage done by Kimberly.

30.     Also on or about November 20, 2012, Plaintiff asked Duren to investigate and intervene with Kimberly in regard to the H & R financial documents.

31.     On or about December 17, 2012, Duren prepared a Replevin Petition to file against Kimberly on behalf of Plaintiff in order to recover the H & R financial documents. At that same time, Duren advised Plaintiff that he was going to obtain a court order for the sheriff to recover said documents from Kimberly.

32.     However, despite Duren's promises, the Replevin Petition was never filed, nor did Duren ever obtain or attempt to obtain such a court order.

33.     Also on or about December 17, 2012, more than a month late, Duren sent Plaintiff a copy of the Arbitration Award. However, he led Plaintiff to believe that the Award was not final and that the Arbitration matter was as yet unresolved.

34. It was not until about March of 2013, after much investigation on Plaintiff's part, that he discovered the fraudulent divorce and sale of some of his assets by Kimberly. However, at that time Plaintiff was still not aware of Duren's connection to these acts.

35. Until about mid-April 2013, when Plaintiff terminated his attorney/client relationship with Duren and Stuart Clover, Duren was still telling Plaintiff that the Arbitration had not concluded and that there was no information from the AAA.

36. Additionally, immediately following the issuance of the arbitration award, Landmark's counsel sent Duren notice of additional warranty related claims against H & R regarding a water tower in Corpus Christi, Texas; that were never reported to Plaintiff.

37. By about January 9, 2013, having exhausted several attempts to resolve the Corpus Christi issues with Duren, who had never shared any information regarding this matter with Plaintiff; Landmark filed a lawsuit against H & R for breach of contract in Tarrant County, Texas claiming damages for repairs to the water tower that Landmark had to complete at its own expense.

38. In addition to Duren being the attorney for H & R, he was also H & R's registered service agent in Oklahoma. As such, a copy of the Landmark breach of contract petition was served on him on January 9, 2013; still Duren failed to notify Plaintiff.

39. On February 19, 2013, the Tarrant County District Court entered a Default Judgment in favor of Landmark since no response or action had been taken by H & R. The judgment amount was greater than the sum of the arbitration award Landmark owed, thus Landmark took the amount of the default judgment as an offset to the arbitration award and Plaintiff never received any of the money awarded to him.

40. Additionally, because Duren never responded to Landmark's counsel and never reported the warranty claim to Plaintiff, H & R was precluded from having any opportunity to correct the alleged Corpus Christi defects. This caused additional damages to Plaintiff since the cost for him to correct the alleged defects with his own crew and materials would have been far less than the amount of Landmark's offset.

41. Duren received a copy of the Default Judgment, but again, failed to notify Plaintiff. Plaintiff only became aware of the lawsuit and default judgment in May 2013, after terminating his attorney/client relationship with Duren and Stuart Clover.

42. Since May of 2013, Plaintiff has discovered that Kimberly Villasana used the forged POA prepared by Duren, to aid her in obtaining and liquidating all of Plaintiff's company and personal cash, assets and real and personal property valued at over Eight Hundred, Sixty Thousand Dollars ($860,000.00) total. This amount includes equipment, tools, trucks, trailers and other items belonging to H & R, which alone, were valued at over Five Hundred Thousand Dollars ($500,000.00).

43. Kimberly Villasana and Robert Duren had specific knowledge of the amount of money owed to Plaintiff by Landmark, the potential for recovery of those funds, and the significant estimated value of all of Plaintiff's personal and business assets and property. Kimberly and Duren were also aware that with Plaintiff out of the country, without a chance to return in the near future, there would be nothing he could do to stop them from selling off all of his assets and property and absconding with all of the proceeds and his cash.

44. Kimberly and Duren's thievery was made easier because Plaintiff trusted, depended, and relied on them to handle his personal and business needs, when in reality they were covering up their actions from him through fraud and concealment.

45. In accordance with Tit. 54 Okla. Stat. § 1-305, Defendant Duren's actions and liability is imputed to his law firm, Stuart, Clover, Duran, Thomas & Vorndran, LLP, where he is a named partner.

## IV. CLAIMS FOR RELIEF

### CLAIM NUMBER 1
### Professional Negligence/Legal Malpractice

46. Plaintiff repeats and re-alleges each allegation contained in paragraphs 1 through 45 of this Petition as though set forth at length herein and further alleges:

47. As an attorney, Duren must possess that degree of knowledge and ability ordinarily possessed by other attorneys, and further, must exercise ordinary care, diligence and judgment in the performance of any service undertaken as an attorney for the Plaintiff.

48. Duren failed to exercise the care which a reasonably careful lawyer in an attorney/client relationship would use under the same or similar circumstances to avoid injury to the Plaintiff's person or property, and/or did something which a reasonably careful lawyer in a similar position would not do, thereby making him negligent.

49. Plaintiff and Duren were engaged in an attorney/client relationship. Duren breached his legal and fiduciary duties owed Plaintiff as required by that relationship, which constitutes negligence, and was the causal nexus of the resulting damages to Plaintiff; but for Duren's conduct, Plaintiff would not have been damaged.

50. Given that Duran's professional negligence/legal malpractice and liability occurred while in the course and scope of his employment as an attorney and partner at Stuart Clover, Defendant Duren's liability is imputed to his law firm.

51. As a result of Defendants professional negligence/legal malpractice, Plaintiff has sustained damages in an amount in excess of approximately One Hundred, Sixty Thousand, Dollars ($160,000.00), which is the amount of recovered Landmark funds still unaccounted for, Sixty Six Thousand, Seven Hundred, Fifty-three Dollars and 17 cents ($66,753.17), which is the amount Plaintiff lost as a result of the Landmark Default Judgment, the value of his personal and business assets sold by Kimberly through use of the forged power of attorney, and the value of Plaintiff's real property that Kimberly transferred with the aid of the forged power of attorney; all of which amounts to approximately Eight Hundred, Sixty Thousand Dollars ($860,000.00).

52. Defendants' professional negligence/legal malpractice was willful, wanton and in reckless disregard of Plaintiff's rights, and warrants the imposition of additional damages to punish Duren and Stuart Clover and/or act as an example to others. Consistent therewith, Plaintiff is entitled to an award of punitive damages in an amount determined at trial, but not less than an amount equal to the amount of actual damages awarded to him.

### CLAIM NUMBER 2
### Breach of Contract

53. Plaintiff repeats and re-alleges each allegation contained in paragraphs 1 through 52 of this Petition as though set forth at length herein and further alleges:

54. Plaintiff was a party to an attorney/client agreement, which was a contract formed between Plaintiff and the Defendants Duren and Stuart Clover, wherein Defendants offered and agreed to perform competent legal services on Plaintiff's behalf and in his best interest while maintaining all legal and fiduciary duties owed him; to which he accepted and in exchange, made payment of Defendants' legal fees and costs as consideration.

55. The attorney/client agreement may be written or oral and may be expressed or implied and is breached or broken when one party does not do what they promised.

56. Defendants breached their contract with Plaintiff by failing to perform competent legal services on his behalf and in his best interest and further failed to maintain their legal and fiduciary duties owed him as promised in the attorney/client agreement.

57. As a direct result of Defendants' breach of contract, Plaintiff has sustained damages in an amount in excess of approximately One Hundred, Sixty Thousand, Dollars ($160,000.00), which is the amount of recovered Landmark funds still unaccounted for, Sixty Six Thousand, Seven Hundred, Fifty-three Dollars and 17 cents ($66,753.17), which is the amount Plaintiff lost as a result of the Landmark Default Judgment, the value of personal and business assets sold by Kimberly through use of the forged power of attorney and the value of real property owned by Plaintiff in various counties within Oklahoma that was transferred in part due to the use of the forged power of attorney; amounting to approximately Eight Hundred, Sixty Thousand Dollars ($860,000.00), which Defendants are liable for in an amount of money that is needed to put Plaintiff in as good a position as he would have been if the contract had not been breached.

58. Defendants' breach of their contractual obligations to Plaintiff was willful, wanton and in reckless disregard of Plaintiff's rights, and warrants the imposition of additional damages to punish Duren and Stuart Clover and/or act as an example to others. Consistent therewith, Plaintiff is entitled to an award of punitive damages in an amount determined at trial, but not less than an amount equal to the amount of his actual damages.

### CLAIM NUMBER 3
### Breach of Fiduciary Duty

59. Plaintiff repeats and re-alleges each allegation contained in paragraphs 1 through 58 of this Petition as though set forth at length herein and further alleges:

60. A fiduciary relationship existed between Plaintiff and Defendants Duren and Stuart Clover in whom Plaintiff reasonably placed his trust and confidence with the expectation of their integrity and loyalty, and Defendants Duren and Stuart Clover knowingly accepted that trust and confidence, and undertook actions on behalf of Plaintiff. This fiduciary relationship exists and is represented by the attorney/client relationship.

61. Defendants' fiduciary duties were those of an agent to a principal and included: the duty of loyalty, duty of performance, duty to maintain confidences, to refrain from self-dealing, and the duty to provide timely and accurate information to the principal.

62. Defendants' breached each and every one of their fiduciary duties to Plaintiff by not failing to remain loyal to him, failing to perform actions as promised and billed, failing to maintain Plaintiff's confidences, failing to refrain from self-dealing, and failing to provide Plaintiff with timely and accurate information regarding his legal matters.

63. Defendants Duren and Stuart Clover's breach of their fiduciary duty owed to Plaintiff makes them liable for any and all harm and damages that are directly caused by their breach. Plaintiff has been damaged as a direct result of Defendants' breach of their fiduciary duties as plead herein.

64. As a result of Defendants' breach of their fiduciary duties, Plaintiff has sustained damages in an amount in excess of approximately One Hundred, Sixty Thousand, Dollars ($160,000.00), which is the amount of recovered Landmark funds still unaccounted for, Sixty Six Thousand, Seven Hundred, Fifty-three Dollars and 17 cents ($66,753.17), which is the amount Plaintiff lost as a result of the Landmark Default Judgment, the value of personal and business assets sold by Kimberly through use of the forged power of attorney and the value of real property owned by Plaintiff in various counties within Oklahoma that was transferred in part due to the use of the forged power of attorney; amounting to approximately Eight Hundred, Sixty Thousand Dollars ($860,000.00).

65. Defendants' breach of their fiduciary duties owed to Plaintiff was willful, wanton and in reckless disregard of Plaintiff's rights, and warrants the imposition of additional damages to punish Duren and Stuart Clover and/or act as an example to others. Consistent therewith, Plaintiff is entitled to an award of punitive damages in an amount determined at trial, but not less than an amount equal to the amount of his actual damages.

### CLAIM NUMBER 4
### Fraud

66. Plaintiff repeats and re-alleges each allegation contained in paragraphs 1 through 65 of this Petition as though set forth at length herein and further alleges:

67.     For the purpose of defrauding Plaintiff, Defendant Duran made verbal and written representations regarding the type, extent and amount of the legal services he was performing on Plaintiff's behalf, knowing those representations to be untrue, with the intent to deceive Plaintiff and induce him to continue employing Defendant to work on his behalf.

68.     For further purposes of defrauding Plaintiff, Defendant Duran failed to actually perform legal services as he purported to Plaintiff, took money from Plaintiff for legal work he never performed, failed to notify, communicate or advise Plaintiff in any manner that would have provided any opportunity for legal protection, counsel or assistance and improperly concealed the truth and facts of other matters from Plaintiff, affirmatively damaging Plaintiff.

69.     Defendant Duran further defraud Plaintiff by directly assisting Kimberly Villasana to steal away Plaintiff's cash, assets and property when he knowingly prepared the forged Power of Attorney she used for such purposes.

70.     Defendant Duren's silence and failure to report to Plaintiff regarding the arbitration award, his wife's divorce, the Landmark warranty claims, lawsuit and subsequent default judgment, were representations by silence known to be false and fraudulent with the intent to deceive Plaintiff such that he would be unaware of such matters, so that Kimberly Villasana could have time to complete her nefarious activities to defraud Plaintiff and strip him of all of his cash, assets and property.

71.     Plaintiff reasonably relied on Defendant Duran's fraudulent statements and representations by silence and continued employing Duren to work on his behalf, fully expecting Duren to competently and loyally pursue and resolve matters that, if competently

and loyally handled, would have resulted in a benefit to Plaintiff and prevented the fraud perpetrated upon him, thus preventing his financial damages plead herein.

72. As a result of Defendant Duran's fraudulent representations, actions, and representations by silence, Plaintiff has sustained damages in an amount in excess of approximately One Hundred, Sixty Thousand, Dollars ($160,000.00), which is the amount of recovered Landmark funds still unaccounted for, Sixty Six Thousand, Seven Hundred, Fifty-three Dollars and 17 cents ($66,753.17), which is the amount Plaintiff lost as a result of the Landmark Default Judgment, the value of personal and business assets sold by Kimberly through use of the forged power of attorney and the value of real property owned by Plaintiff in various counties within Oklahoma that was transferred in part due to the use of the forged power of attorney; amounting to approximately Eight Hundred, Sixty Thousand Dollars ($860,000.00).

73. Given that Defendant Duran's fraudulent actions were taken while in the course and scope of his employment as an attorney and partner at Stuart, Clover, Duran, Thomas & Vorndran, LLP, Defendant Duren's liability is imputed to the law firm.

74. Defendants' fraudulent conduct was willful, wanton and in reckless disregard of Plaintiff's rights, and warrants the imposition of additional damages to punish Duren and Stuart Clover and/or act as an example to others. Consistent therewith, Plaintiff is entitled to an award of punitive damages in an amount determined at trial, but not less than an amount equal to the amount of actual damages awarded to him.

## V.  PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED**, Plaintiff Hector Alejandro Villasana hereby respectfully prays this Court enter judgment in his favor on all his claims against the Defendants Robert S. Duren, Jr. and Stuart, Clover, Duran, Thomas & Vorndran, LLP, and requests as follows:

(1) that this Court award Plaintiff all his actual damages in the amount of Eight Hundred, Sixty Thousand Dollars ($860,000.00) in order to make him whole from his losses directly related to Defendants' professional negligence/legal malpractice;

(2) that this Court award Plaintiff the full amount he paid Defendants for legal fees, costs and any money remaining in trust by an Order for Disgorgement;

(3) that this Court award Plaintiff punitive damages in an amount not less than the sum awarded to him for actual damages;

(4) that this Court award Plaintiff his actual attorney fees and costs expended in the prosecution of this action; and

(5) that this Court award Plaintiff appropriate prejudgment and post-judgment interest as provided by law;

(6) that this Court award Plaintiff any and all other and further relief in equity or at law deemed just and proper.

Respectfully submitted,
**SHOOK & JOHNSON, P.L.L.C.**

_____
Sean E. Manning, OBA No. 18961
7420 South Yale Avenue
Tulsa, Oklahoma 74136-7029
smanning@shookjohnson.com
Telephone:  (918) 293-1122
Facsimile:  (918) 293-1133
*Attorney for the Plaintiffs*